## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| KIARA ZYEERICA COLLIER, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, WAKEFIELD & ASSOCIATES INC., COLLECTION MANAGEMENT CO., and CAINE & WEINER COMPANY INC., | |
| Defendants. | |

## COMPLAINT

Plaintiff Kiara Zyeerica Collier, by counsel, files this Complaint against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the "CRA Defendants"), as well as Wakefield & Associates Inc. ("Wakefield"), Collection Management Co. ("Collection Management"), and Caine & Weiner Company Inc. ("Caine & Weiner") (collectively, the "Furnisher Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages, costs, and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 15 U.S.C. § 1692, *et seq.*

2.      Congress enacted the FCRA to require that consumer reporting agencies "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). To achieve this purpose, the statute contains requirements and obligations that consumer reporting agencies and furnishers must follow when consumers dispute information in their credit reports. 15 U.S.C. § 1681i, 1681s-2.

3.      Similarly, the FDCPA is designed to prevent debt collectors like the Furnisher Defendants from using unfair and deceptive practices in connection with the collection of debts, including by seeking to collect debts from consumers who do not owe those debts.

4.      In this case, Equifax, Experian, and Trans Union each reported on Ms. Collier's credit reports several accounts that did not belong to her and that were

allegedly past due, as well as the names, addresses, and employment history that did not belong to—and had ever belonged to—Ms. Collier.  The Furnisher Defendants in turn provided the information on these accounts in an attempt to collect debts from Ms. Collier that she did not owe.

5.     For example, Ms. Collier's reports included several past due medical accounts for treatment at hospitals that Ms. Collier had never even visited, let alone received treatment.  As a result of these, and other, inaccuracies, Ms. Collier's credit score dropped significantly, harming her ability to obtain credit.

6.     After Ms. Collier disputed the inaccurate information with Equifax, Experian, and Trans Union several times, including providing information establishing her identity as different from the individuals whose debts had been reported on her credit, Defendants failed to correct her credit reports.  Faced with the continued harm from Defendants' conduct, Ms. Collier brings claims against the CRA Defendants for failing to reasonably ensure the maximum possible accuracy of her credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

7.     Ms. Collier also alleges claims against the Furnisher Defendants for failing to fully and properly investigate her disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA,

3

15 U.S.C. § 1681s-2(b)(1).  And Ms. Collier alleges that the Furnisher Defendants violated the FDCPA, 15 U.S.C. § 1692e, by attempting to collect debts from her that she did not owe.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

9.     Venue is proper in this Court punder 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Collier's claims occurred in this District and Division, where Ms. Collier resides and has suffered the harm from Defendants' conduct.

## PARTIES

10.     Ms. Collier is a natural person who resides in this District and Division. She is a consumer as defined by 15 U.S.C. § 1681a(c).

11.     Equifax is a foreign limited liability company authorized to do business in Georgia.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12.     Experian is a foreign corporation authorized to do business in Georgia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13.     Trans Union is a foreign limited liability company authorized to do business in Georgia.  Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14.     Wakefield is a foreign corporation registered to do business in Georgia. It is a furnisher governed by the FCRA.  Wakefield is a "furnisher" as governed by the FCRA.  It is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) because, upon information and belief, it uses interstate commerce, including mail, to regularly collect or attempt to collect debts from consumers that are owed to another entity, and/or because its principal purpose as a business is the collection of non-performing debts.

15.     Collection Management is a foreign company registered to do business in Georgia.  It is a furnisher as governed by the FCRA.  Collection Management is a "furnisher" as governed by the FCRA.  It is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) because, upon information and belief, it uses interstate commerce, including mail, to regularly collect or attempt to collect debts from consumers that are owed to another entity, and/or because its principal purpose as a business is the collection of non-performing debts.

16.     Caine & Weiner is a foreign corporation registered to do business in Georgia.  It is a furnisher as governed by the FCRA.  Caine & Weiner is a "furnisher"

as governed by the FCRA.  It is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) because, upon information and belief, it uses interstate commerce, including mail, to regularly collect or attempt to collect debts from consumers that are owed to another entity, and/or because its principal purpose as a business is the collection of non-performing debts.

## FACTS

### *Ms. Collier's Mixed Credit Reporting*

17.    In August 2023, Ms. Collier discovered that her credit reports with Experian, Equifax, and Trans Union each contained inaccurate information about debts allegedly owed by her and which were allegedly in collections.

18.    For example, Ms. Collier's Experian report contained two accounts reported by Collection Management as being in collections, with past due amounts allegedly owed for medical treatment at the Houston County Emergency Group.  Her report also contained past due medical bills for treatment at the same facility reported by Commonwealth Financial.  However, Ms. Collier had never even visited Houston County Emergency Group, let alone received treatment there that would incur any debts.

19.    Ms. Collier's Experian report also contained an allegedly past-due account with Progressive, which had been submitted to and was reported as a past-

due collections account by Caine & Weiner.  Yet, Ms. Collier had never had any account with Progressive, either.

20.     And her Experian report also listed a hard credit inquiry in July 2023 from Synchrony Bank on behalf of Belk, from whom Ms. Collier had never requested credit.

21.     Similarly, Ms. Collier's Equifax report claimed that she had past due collections accounts with Commonwealth Financial and Caine & Weiner, again for the same alleged medical treatment and Progressive account that had no relationship to Ms. Collier.  Equifax also reported that Ms. Collier had a past-due account reported by Wakefield for medical bills that she allegedly owed to Southeastern Emergency, a hospital at which Ms. Collier had never received treatment.

22.     And Ms. Collier's Trans Union report contained the same inaccurately reported accounts from Caine & Weiner, Collection Management, and Wakefield.

23.     Ms. Collier suspected that these accounts and inquiries were in fact associated with other individuals with whom the CRA Defendants and Furnisher Defendants had confused her and were inaccurately reporting on her credit reports.

24.     Confirming this suspicion, her credit reports each also contained several names, addresses, and employment history information that had no relationship to her.  For example, all three of the CRA Defendants reported that she

had gone by the name "Kira Jackson," when in fact she had not, and they also listed several addresses in Tennessee and Georgia at which she had never resided. Equifax and Experian also associated Ms. Collier with a "Kiara D. Collier" and "Kiara V. Collier," neither of which have ever been her names.

25.   And Experian and Trans Union reported that Ms. Collier worked at Wendy's, while Trans Union further reported that she worked at McDonald's, when in fact she had no employment history remotely associated with either company.

26.   As this additional inaccurate information confirmed, Defendants had mixed up Ms. Collier's credit history with that of other individuals, causing significant harm to her credit based on alleged debts, credit inquiries, and employment information that had nothing to do with her.

### *Ms. Collier's Dispute Letters and Defendants' Inadequate Investigations*

27.   Shortly after discovering this inaccurate information, in August 2023, Ms. Collier submitted dispute letters to Equifax, Experian, and Trans Union disputing the status of the accounts, names, addresses, and employment history identified above. Each letter also provided Ms. Collier's full name, date of birth, social security number, and address history and explained that the accounts were being inaccurately reported on her credit report when she had no relationship with the original creditors to whom she allegedly owed the disputed debts, nor any

relationship to the names, addresses, and employment histories were being reported in her credit file.

28.     Upon information and belief, Experian forwarded Ms. Collier's dispute to Collection Management.

29.     Collection Management understood Ms. Collier's dispute.

30.     In response to Ms. Collier's disputes, each of the Defendants again failed to conduct an adequate and substantive investigation.

31.     Indeed, Equifax never responded to Ms. Collier's August 2023 dispute letter, while Trans Union requested additional information to confirm Ms. Collier's identity, which Ms. Collier provided.

32.     After providing this confirmation, however, upon information and belief, Trans Union simply forwarded Ms. Collier's disputes to Collection Management and Wakefield, who, despite understanding the dispute, simply looked at the account notes in their systems and confirmed that the disputed accounts belonged to Ms. Collier without reviewing their own documents, and without checking the identifying information in those documents against the confirmation of Ms. Collier's identity that she provided.

33.     Likewise, upon receipt of Ms. Collier's dispute from Experian, Collection Management simply looked at the account notes in its system and

confirmed that the account belonged to Ms. Collier.  It did not review its own documents, including the social security numbers, address information, or names of the debtors of the reported account(s).  Nor did it review and cross-check the information in its systems with the evidence of Ms. Collier's identity included in her dispute letter.

34.     Experian and Trans Union simply accepted the outcomes of Collection Management's and Wakefield's so-called investigations and took no additional steps to confirm that the accounts belonged to Ms. Collier.  Notably, Experian and Trans Union did so even though they agreed in their dispute responses that nearly all of the addresses, names, and employment history that Ms. Collier disputed did not belong to her.

35.     Experian even agreed to delete the Commonwealth Financial accounts that it had previously associated with Ms. Collier as inaccurate, which should have indicated to Experian that there had been a mix up in Ms. Collier's file with respect to the Collection Management accounts, as those accounts, like the Commonwealth Financial account, were for medical debts allegedly owed to Houston County Emergency Group by someone other than Ms. Collier.

36.     Additionally, although stating in response to Ms. Collier's dispute that it would delete the Caine & Weiner account, the account appeared on Ms. Collier's

most recent Experian report, meaning Experian either failed to delete the account as it claimed or later reinstated the account to Ms. Collier's credit file without providing notice to Ms. Collier that the account had been restored or, upon information and belief, obtaining Caine & Weiner's certification that the account was complete and accurate.

37.     The CRA Defendants continued to report most of the inaccurate information identified by Ms. Collier's dispute letters, including most of the disputed accounts reported by the Furnisher Defendants, on her credit reports.

38.     After receiving these results, Ms. Collier mailed follow-up dispute letters to Experian and Trans Union on October 25, 2023.  The same day, she also mailed letters to the Furnisher Defendants disputing that she owed the debts reported on her credit report and asking them to each validate that she owed the debt.

39.     Ms. Collier's dispute letter to Experian again explained that she had no relationship to the debts allegedly owed to Houston County Emergency Group that had been reported by Collection Management, while informing Experian that she was contacting Collection Management to dispute the debt.  She also disputed the remaining address that Experian had failed to delete in response to her last August 2023 dispute letter, as well as the July 2023 inquiry from Synchrony Bank/Belk that remained on her report.

40.   Ms. Collier's dispute letter to Trans Union similarly disputed two addresses that remained on her Trans Union report, as well as the continued inaccurate reporting of her employment history at Wendy's.  Ms. Collier further explained (again) that she had not incurred the debts reported by Collection Management, Wakefield, and Caine & Weiner, noting also that she had disputed the debt with each debt collector.

41.   In both letters, Ms. Collier again provided her address history, full name, date of birth, and social security number so that Defendants could confirm that the reported accounts and identifying information were in fact not associated with her.

42.   Upon information and belief, Experian forwarded Ms. Collier's dispute to Collection Management, while Trans Union forwarded her dispute to all the Furnisher Defendants.

43.   The Furnisher Defendants understood Ms. Collier's disputes.

44.   In response to Ms. Collier's disputes, each of the Defendants again failed to conduct an adequate and substantive investigation.

45.   Specifically, the Furnisher Defendants simply looked at the account notes in their systems and confirmed that the accounts belonged to her.  The Furnisher Defendants did not review their own documents, including the social

security numbers, address information, or names of the debtors of the reported accounts.  Nor did they review and cross-check the information in their systems with the evidence of Ms. Collier's identity included in her dispute letters.

46.     Trans Union and Experian accepted the outcome of the Furnisher Defendants' so-called investigations and took no additional steps to investigate Ms. Collier's disputes.  Instead, they updated Ms. Collier's credit file exactly as the Furnisher Defendants instructed, continuing to report the disputed accounts with each furnisher on Ms. Collier's reports.

47.     Moreover, although Trans Union stated that it had deleted the Caine & Wiener account, the account still appears on Ms. Collier's most recent Trans Union report, meaning Trans Union either failed to delete the account as it claimed or reinserted the account in Ms. Collier's credit file without providing any notice to Ms. Collier and, upon information and belief, without obtaining any certification from Caine & Weiner that the deleted account was in fact complete and accurate.

48.     Ms. Collier sent a follow-up dispute letter to Equifax and a second follow-up dispute letter to Experian and Trans Union on December 20, 2023.

49.     Ms. Collier's dispute letter to Equifax again disputed the accounts reported by Caine & Weiner and Wakefield, explaining that Ms. Collier had never had an account with Progressive or incurred the medical debt Wakefield claimed that

she owed.  Ms. Collier also directly requested that Equifax cross-check the addresses associated with the addresses it had confirmed were associated with her.  She explained that this would likely confirm that there was a mix up in her credit file. And Ms. Collier noted that she had disputed the debts with Wakefield and had received no verification of the debt.

50.     In her letter to Experian, Ms. Collier likewise disputed the continued reporting of the Collection Management accounts associated with medical debts allegedly owed to Houston County Emergency Group, while also requesting that Experian cross-check the addresses associated with the accounts with her file.  She explained that this would confirm that the accounts had been inaccurately reported in her file due to a false association with another individual.  And Ms. Collier noted that she had disputed the debts with Collection Management and received no response.  Finally, she again requested confirmation that Experian had deleted the July 2023 credit inquiry from Synchrony Bank/Belk, as well as an errant address that remained on her credit file.

51.     In her letter to Trans Union, Ms. Collier disputed the accounts from Collection Management and Wakefield that Trans Union refused to delete from her credit file.  As with the other CRA Defendants, Ms. Collier specifically requested that Trans Union cross-check the addresses associated with each account and

explained that neither debt collector had provided the requested verification of the alleged debt.  Ms. Collier also asked that Trans Union delete an address that it was still improperly associating with her.

52.     Upon information and belief, Equifax forwarded Ms. Collier's dispute to Caine & Weiner and Wakefield and Experian forwarded Ms. Collier's dispute to Collection Management.

53.     The Furnisher Defendants understood Ms. Collier's disputes that were forwarded to them.

54.     In response to these disputes, Defendants again failed to conduct an adequate and substantive investigation.

55.     Indeed, Trans Union never responded to Ms. Collier's second follow-up dispute.

56.     For their part, upon receiving Equifax's and Experian's forwarded disputes, Collection Management and Caine & Weiner merely looked at the account notes in their systems and reconfirmed that the accounts they reported on Ms. Collier's reports were associated with her.  Collection Management and Caine & Weiner did not review their own documents, including the social security numbers, address information, or names of the debtors of the reported accounts.  Nor did they

review and cross-check the information in their systems with the evidence of Ms. Collier's identity included in her dispute letters.

57.    Experian and Equifax accepted Collection Management's and Caine & Wiener's reporting without further investigation and failed to remove the disputed accounts from Ms. Collier's credit files, and Equifax deleted only the Wakefield account from Ms. Collier's report.

58.    As a result of Defendants' inadequate investigations, Equifax continues to inaccurately report the Caine & Weiner account on Ms. Collier's credit report; Experian continues to inaccurately report the Caine & Weiner account (despite its representation in September 2023 that it had deleted the account), two Collection Management accounts, the July 2023 inquiry from Synchrony Bank/Belk, and the errant address at which Ms. Collier has never resided; and Trans Union continues to inaccurately report the Collection Management account, the Caine & Weiner account that it stated it had deleted, and her alleged employment at Wendy's.

59.    Because of the Defendants' conduct, Ms. Collier has suffered significant actual damages, including receiving less favorable rates on auto loans that she ultimately could not accept, a decreased credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

### *Defendants' FCRA Violations Were Willful*

60.   As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

61.   Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once the Furnisher Defendants verified the status of Ms. Collier's accounts, and they did not take any other actions to verify the accuracy of the information that the Furnisher Defendants provided.

62.     Instead, Equifax, Trans Union, and Experian blindly accepted the Furnisher Defendants' version of the facts and continued to report the inaccurate, derogatory information on Ms. Collier's credit reports, despite the clear evidence provided by Ms. Collier to the contrary and their own admission that much of the information associated with Ms. Collier, including several addresses, names, and accounts, had been inaccurately reported in her credit file, putting them on notice that they were inaccurately reporting accounts on Ms. Collier's credit reports that were in fact not associated with Ms. Collier.

63.     Equifax, Experian, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

64.     Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

65.     Therefore, at all times relevant to this Complaint, Equifax's, Experian's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

66.     The Furnisher Defendants' processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. In fact, the Furnisher Defendants acted in accordance with their intended procedures. In addition, the Furnisher Defendants prioritize processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

67.     In addition, the willfulness of the Furnisher Defendants' FCRA violations can be established by, for example, the fact that:

    a. Congress enacted the FCRA in 1970, and the Furnisher Defendants have had over 50 years to become compliant;

    b. The Furnisher Defendants are corporations with access to legal advice through their own general counsel and outside litigation counsel. Yet, there is not contemporaneous evidence that any of the Furnisher Defendants determined that their conduct was lawful;

    c. The Furnisher Defendants knew, or had reason to know, that their conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

    d. The Furnisher Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

e. The Furnisher Defendant's FCRA violations were repeated and systematic;

f. The Furnisher Defendants had substantial documentation available to them that apprised them of their duties under the FCRA but still chose not to comply with the statute; and

g. The Furnisher Defendants had notice of their defective dispute processing procedures through internal audits and litigation, but chose not to meaningfully change their policies and procedures to comply with the FCRA.

**<u>COUNT ONE:</u>**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(THE CRA DEFENDANTS)**

68.     Ms. Collier incorporates the allegations set forth above.

69.     Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure the maximum possible accuracy of Ms. Collier's credit reports and credit files.

70.     Because of Equifax's, Experian's and Trans Union's conduct, Ms. Collier suffered actual damages, including the inability to obtain favorable credit, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

71.    Equifax's, Experian's, and Trans Union's violations of § 1681e(b) were willful, rendering them liable to Ms. Collier for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n.

72.    In the alternative, the CRA Defendants' violations were negligent, which entitles Ms. Collier to recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(THE CRA DEFENDANTS)**

73.    Ms. Collier incorporates the allegations set forth above.

74.    Equifax, Experian, and Trans Union violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the Furnisher Defendants with all the relevant information about Ms. Collier's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Collier in violation of §1681i(a)(4); and (4) failing to promptly modify the disputed accounts to remove any derogatory reporting or indication that the accounts belonged to and were owed by Ms. Collier after a lawful reinvestigation in violation of § 1681i(a)(5)(A).

75.     Because of Equifax's, Experian's, and Trans Union's violations of §1681i, Ms. Collier suffered actual damages, including the inability to obtain favorable credit, decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

76.     Equifax's, Experian's, and Trans Union's violations of § 1681i were willful, rendering them liable to Ms. Collier for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n.

77.     In the alternative, the CRA Defendants' violations were negligent, entitling Ms. Collier to recovery under 15 U.S.C. § 1681o.

### COUNT THREE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681i(a)(6)
### (EQUIFAX AND TRANS UNION)

78.     Ms. Collier incorporates the allegations set forth above.

79.     As outlined above, Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(6) by failing to provide Ms. Collier the results of their reinvestigations after it received her dispute letters.

80.     Because of Equifax's and Trans Union's conduct, Ms. Collier suffered actual damages, including the inability to obtain favorable credit, a decreased credit

score, damage to reputation, embarrassment, humiliation, and other emotional distress.

81.     Equifax's and Trans Union's conduct was willful, rendering them liable to Ms. Collier for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n.

82.     In the alternative, Equifax's and Trans Union's conduct was negligent, entitling Ms. Collier to recovery under 15 U.S.C. § 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i(a)(5)**
**(EXPERIAN AND TRANS UNION)**

83.     Ms. Collier incorporates the allegations set forth above.

84.     As outlined above, Experian and Trans Union violated 15 U.S.C. § 1681i(a)(5) by either failing to promptly delete the Caine & Weiner account from Ms. Collier's credit file after they each represented to her that they would as a result of their reinvestigations, in violation of § 1681i(a)(5)(A), or, alternatively, by reinserting the Caine & Weiner account in Ms. Collier's credit file without either certification that the information is complete or accurate by Caine & Weiner or providing notice and additional information regarding the reinstatement to Ms. Collier pursuant to § 1681(a)(5)(B)(ii)-(iii).

85. Because of Experian and Trans Union's conduct, Ms. Collier suffered actual damages, including the inability to obtain favorable credit, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

86. Experian's and Trans Union's conduct was willful, rendering them liable to Ms. Collier for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n.

87. In the alternative, Experian's and Trans Union's conduct was negligent, entitling Ms. Collier to recovery under 15 U.S.C. § 1681o.

## <u>COUNT FIVE:</u>
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (THE FURNISHER DEFENDANTS)

88. Ms. Collier incorporates the allegations set forth above.

89. On one or more occasion within the past two years, the Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Collier's disputes.

90. When Ms. Collier disputed her account with the consumer-reporting agencies, the Furnisher Defendants used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

91.    E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

92.    E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

93.    Upon information and belief, the ACDV form is the what that the Furnisher Defendants have each elected to use to receive consumer disputes under 15 U.S.C. § 1681i(a).

94.    Upon information and belief, the credit reporting agencies forwarded Ms. Collier's disputes by ACDVs.

95.    The Furnisher Defendants understood the nature of Ms. Collier's disputes when it received the ACDV form.

96.    Upon information and belief, when the Furnisher Defendants received the ACDV forms containing Ms. Collier's disputes, they followed a standard and systemically unlawful process where they only reviewed their own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

97.     Upon information and belief, when the Furnisher Defendants receive a consumer dispute through e-Oscar, they do not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

98.     Because of the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. Collier suffered actual damages, including the inability to obtain favorable credit, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

99.     The Furnisher Defendants' violations of § 1681s-2(b)(1)(A) were willful, rendering it liable to Ms. Collier for damages under 15 U.S.C. § 1681n.

100.    In the alternative, the Furnisher Defendants were negligent, entitling Ms. Collier to damages under 15 U.S.C. §1681o.

## COUNT SIX:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (THE FURNISHER DEFENDANTS)

101.    Ms. Collier incorporates the allegations set forth above.

102.    On one or more occasions within the past two years, the Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer-reporting agencies.

103.   As Ms. Collier detailed in the previous Count, the Furnisher Defendants have elected to use the e-Oscar system for its FCRA disputes from the consumer reporting agencies.

104.   When they received the ACDV forms from the credit-reporting agencies, the Furnisher Defendants did not review any of the documentation that Ms. Collier attached to her disputes, which demonstrated that the disputed accounts reported by each Furnisher Defendant were not in fact associated with or owed by Ms. Collier.

105.   If the Furnisher Defendants had reviewed this evidence, which included identifying information for Ms. Collier, then they would have known that their previous reporting was incorrect and needed to be updated.

106.   The Furnisher Defendants also disregarded the other information that the consumer-reporting agencies provided on Ms. Collier's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

107.   The Furnisher Defendants knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

108.   The Furnisher Defendants do not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

109.   The Furnisher Defendants understood Ms. Collier's disputes and that she claimed that the accounts were in fact not associated with her but belonged to someone else with whom she had been mixed up.

110.   Despite this, the Furnisher Defendants did not update their incorrect reporting regarding Ms. Collier's accounts.

111.   Because of the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(B), Ms. Collier suffered actual damages, including the inability to obtain favorable credit, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

112.   The Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

113.   In the alternative, the Furnisher Defendants were negligent, entitling Ms. Collier to damages under 15 U.S.C. § 1681o.

<u>**COUNT SEVEN:**</u>
**VIOLATION OF FCRA, 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D)**
**(THE FURNISHER DEFENDANTS)**

114.   Ms. Collier incorporates the preceding allegations.

115.   On one or more occasion within the past two years, the Furnisher Defendants violated 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing their representations within Ms. Collier's credit files without also including any notation

at all that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

116.   For example, the Furnisher Defendants failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field of at least one of the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

117.   In addition, the Furnisher Defendants failed to add any other notation that Ms. Collier's account was disputed.

118.   Furthermore, the Furnisher Defendants knew that Ms. Collier disputed the subject account through her dispute letters to the credit reporting agencies.

119.   Ms. Collier's disputes were bona fide as, despite the Furnisher Defendants' reporting otherwise, the accounts did not belong to and were not owed by her.

120.   Because of the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Ms. Collier suffered concrete and particularized harm, including but not limited to: the inability to obtain favorable credit, a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

121.   The Furnisher Defendants' violations were willful, rendering them liable for punitive damages under 15 U.S.C. § 1681n.   In the alternative, the

Furnisher Defendants were negligent, entitling Ms. Collier to recover against it under 15 U.S.C. § 1681o.

122.   Ms. Collier is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from the Furnisher Defendants under 15 U.S.C. §§ 1681n and 1681o.

## COUNT EIGHT:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (THE FURNISHER DEFENDANTS)

123.   Ms. Collier incorporates the preceding allegations.

124.   The Furnisher Defendants violated the FDCPA, § 1692e, by using false, deceptive, or misleading representations or means in connection with the collection of any debt, including attempting to collect debts from Ms. Collier that she did not owe.

125.   Ms. Collier suffered actual damages because of the Furnisher Defendants' § 1692e violations, including a decreased credit score, the inability to obtain favorable credit, embarrassment, humiliation, and emotional distress.

126.   Ms. Collier is entitled to recover actual damages, statutory damages, her reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Ms. Collier demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorney's fees and

costs; prejudgment and post-judgment interest at the judgment rate; and such other

relief the Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Submitted this 17th day of April, 2024.

Respectfully submitted,

**KIARA ZYEERICA COLLIER**

By:____*/s/ Matthew G. Rosendahl*_____
Matthew G. Rosendahl (Ga. Bar # 449311)
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*